IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


JOYCE L. LOONEY,                          CV 07-6143-MA

         Plaintiff,                       OPINION AND ORDER

     v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

         Defendant.

KATHRYN TASSINARI
MARK MANNING
Harder, Wells, Baron & Manning, P.C.
474 Willamette, Suite 200
Eugene, OR 97401
(541) 686-1969

         Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1158

1 - OPINION AND ORDER

NANCY A. MISHALANIE
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-3619

    Attorneys for Defendant

MARSH, Judge.

    Plaintiff Joyce Looney seeks judicial review of the final decision of the Commissioner denying her August 10, 2004, application for disability insurance income benefits (benefits) under Title II of the Social Security Act, 42 U.S.C. §§ 401-33.

    Plaintiff was 54 years old on the date of the final decision of the Commissioner.  She claims she has been disabled since June 18, 2004, because of loss of vision in her left eye, hearing loss in her left ear and mild hearing loss in her right ear, severe swelling in her legs, and obesity.  The Administrative Law Judge (ALJ) held a hearing on September 21, 2006, and issued a decision on January 25, 2007, that plaintiff was able to perform her past relevant work as an administrative clerk and, therefore, was not disabled.  Plaintiff timely appealed the decision to the Appeals Council.  On May 2, 2007, the Appeals Council denied plaintiff's request for review.  The ALJ's decision, therefore, became the final decision of the Commissioner for purposes of review.

    Plaintiff contends the ALJ's decision is not supported by

2 - OPINION AND ORDER

substantial evidence and she seeks an order from this court reversing the Commissioner's decision and remanding the case for an award of benefits.

For the following reasons, the final decision of the Commissioner is **AFFIRMED**.

## THE ALJ'S FINDINGS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled.  Bowen v. Yuckert, 482 U.S.137, 140 (1987).  See also 20 C.F.R. § 404.1520.  Plaintiff bears the burden of proof at Steps One through Four.  See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  Each step is potentially dispositive.

At Step One, the ALJ found plaintiff had not engaged in substantial gainful activity since the alleged onset of her disability.

At Step Two, the ALJ found plaintiff has the following severe impairments under 20 C.F.R. §404.1520(c)(an impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities):  obesity; blindness in the left eye; and reduced hearing in the left ear.

At Step Three, the ALJ found these impairments do not meet or equal a listed impairment.

3 - OPINION AND ORDER

The ALJ found plaintiff has the residual functional capacity to perform light work that involves lifting 10 lbs frequently and 20 lbs occasionally, sitting six hours in an eight-hour day, standing or walking for no more than two hours in an eight-hour day with the ability to change positions each hour, occasional balancing, avoidance of ladders, ropes, scaffolds, concentrated noise and work hazards, and she should not work under conditions where she would need binocular vision.

At Step Four, the ALJ found plaintiff is able to perform her former job as an administrative clerk. Based on this finding, the ALJ did not need to determine whether plaintiff could perform other work.

Accordingly, the ALJ found plaintiff was not disabled and denied her claim for benefits.

## ISSUES ON REVIEW

Plaintiff asserts the ALJ erred in rejecting (1) plaintiff's testimony as to her physical limitations, and (2) the opinion of treating physician Michael Laurie, M.D.

## LEGAL STANDARDS

**Burden of Proof**.

The initial burden of proof rests on the claimant to establish disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). To meet this

burden, a claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C § 423(d)(1)(A).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  <u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation."  <u>Andrews</u>, 53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record. <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 849 (9th Cir. 1991).  The duty to further develop the record, however is triggered only when there is ambiguous evidence or when the record is inadequate to

5 - OPINION AND ORDER

allow for proper evaluation of the evidence.  <u>Mayes v. Massanari</u>, 276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir.), <u>cert</u>. <u>denied</u>, 121 S. Ct. 628 (2000).  "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded."  <u>Lewin v. Schweiker</u>, 654 F.2d 631, 635 (9th Cir. 1981).

## RELEVANT RECORD

### 1. Plaintiff's Evidence.

Plaintiff's evidence is drawn from her September 2004 written report accompanying her disability application and her September 2006 hearing testimony.

<u>Education/Work History</u>.

Plaintiff has an associate degree in bible studies.  Before the onset of her alleged disability, she worked for six years as an administrative clerk for a shipping company during which time she answered customers' questions regarding shipping rates and shipment tracking.  Her job was eliminated when the company was reorganized in June 2004, the same date she alleges she became disabled.  Plaintiff received unemployment for a short time after her job was eliminated until she realized she was not entitled to such benefits if she was not able to return to work.

Health Background.

Plaintiff weighs 310 lbs and has difficulty breathing if she walks too much.  She has brain tumors that have left her blind in her left eye and deaf in her left ear and cause her occasional difficulty swallowing.  She claims progressively worsening eye strain in her right eye because it has to work harder.  As a result, she has depth perception problems because objects seem closer than they really are.  She is able to work at her computer at home for 10-15 minutes at a time before resting her eyes for 30 minutes.  She does not like to walk for fear of losing her balance and falling down because of her hearing difficulties.

Work-Related Health Issues.

After her job ended, it became clear to plaintiff that she would not be able to return to work in a similar job because, in addition to her progressively worsening vision problems and balance problems, she had swelling in her legs that was relieved only by keeping them elevated.  She contends she was not able to elevate her legs in her former job.  Nevertheless, Plaintiff was able to wear compression stockings at her former job in order to relieve the swelling.  Now, she relieves the swelling by keeping her legs elevated at home for 15 minutes at a time.  She no longer wears the compression stockings because, in her opinion, keeping her legs elevated works better.  Plaintiff denies that

7 - OPINION AND ORDER

her doctor has told her the use of compression stockings was the best treatment for the swelling.

Plaintiff also testified that while she was still working, her treating doctor had offered to write a note to her employer that plaintiff would need to keep her legs elevated at work to relieve the swelling in her legs. The only medical record reflecting such a conversation, however, is dated five months after plaintiff's job ended. Moreover, the doctor's offer to write a note to her employer appears to be in response to plaintiff's specific request at that time when, in fact, plaintiff was not employed. Plaintiff contends the medical record is in error because she had asked the doctor for such a note while she was still working.

<u>Daily Activities</u>.

Plaintiff's daily activities since she became disabled include preparing daily medications and caring for her ailing father who lives with her, fixing light lunches, doing light housework including the laundry, running short errands, reading during the afternoon, making dinner, cleaning the kitchen, and watching television before going to bed. She is no longer able to tend the garden, clean windows, change light bulbs, do fine needlework, or go camping, fishing, or hunting.

Plaintiff gets six hours of broken sleep each night and

sometimes feels unrested during the day.  She will nap in the afternoon if she has an active day, e.g., grocery shopping or going to see her doctor.

**2.    Medical Records.**

    **Treating Physicians.**

    <u>Joyce Brackebusch, M.D. - Ear, Nose, and Throat Specialist</u>.

In March 2001, Dr. Brackebusch examined plaintiff for decreased hearing in her left ear.  She noted plaintiff's history of schwannoma cancer (tumors in the peripheral nervous system).  An audiogram revealed normal hearing in the right ear and mixed hearing loss in the left ear.

In September 2006, Dr. Brackebusch found no usable hearing in plaintiff's left ear and mild hearing loss in her right ear.

    <u>Timothy You, M.D. - Vireoretinal Surgeon</u>.

In March 2001, Dr. You found plaintiff's vision in her left eye was 20/200, which was compatible with her medical history.  Her vision in her right eye was 20/20.

    <u>Kasia Van Pett, M.D. - Neurosurgeon</u>.
    <u>Kim Wayson, M.D. - Neurosurgeon</u>.

In March 2001, Dr. Van Pett examined plaintiff for her complaints of decreased vision in her left eye, numbness over her left brow, decreased hearing in her left ear, and increased loss of balance related to a tumor mass in the brain.  Plaintiff did not complain of problems with her right eye and right ear.  On

9 - OPINION AND ORDER

examination, plaintiff's memory was intact and her speech was normal. Dr. Van Pett noted a current MRI suggested a tumor mass consistent with plaintiff's history and a possible recurrence of schwannoma cancer. As a consequence, Dr. Van Nett referred plaintiff to Dr. Wayson for Gamma Stereotactic Radiosurgery, which involves a non-invasive procedure whereby narrow radiation beams are aimed at the tumors to destroy them.

Dr. Wayson performed the procedure on May 15, 2001, and recommended further treatment and a follow-up MRI.

<u>Stephen Bader, M.D. - Internist, Radiation Oncologist</u>.

Dr. Bader performed six MRIs between November 2001 and June 2005, and found plaintiff's brain tumors were stable. In October 2004, Dr. Bader responded to a questionnaire from plaintiff's attorney regarding plaintiff's ability to work by stating that plaintiff suffered from double vision and decreased hearing, but that he had no opinion as to her ability to work because he had not examined her since November 2003.

<u>Michael Laurie, M.D. - Internal Medicine</u>.

In May 2003, Dr. Laurie first treated plaintiff, diagnosing her as suffering from possible mild congestive heart failure and an enlarged heart, with associated difficulty in breathing, leg swelling, improving hypertension, and a chronic ear inflammation. Plaintiff stated she has swelling in her legs 24 hours a day.

In February 2004, plaintiff again complained of leg swelling, which she was able to relieve by elevating her legs. She stated, however, that was not an option at work. She did not want to wear compression stockings because they were difficult to put on and take off. Dr. Laurie, however, referred her to physical therapy to discuss treatment options such as compression stockings that plaintiff could put on herself.

In November 2004, five months after her job was eliminated, plaintiff asked for a note from Dr. Laurie indicating that she needed to have her legs elevated to alleviate the leg swelling. She had no other complaints.

In April 2005, plaintiff complained of difficulty breathing. A chest x-ray showed signs of mild congestive heart failure.

In September 2005, plaintiff complained of difficulty sleeping, probably related to sleep apnea.

In December 2005, plaintiff complained that her balance difficulties were getting progressively worse and she was having problems swallowing. She did not ask Dr. Laurie, however, to address these complaints. All she asked was for his statement as to her level of disability. Dr. Laurie told her it was "significant."

In July 2006, Dr. Laurie noted plaintiff had no sign of congestive heart failure. Dr. Laurie completed paperwork

11- OPINION AND ORDER

regarding plaintiff's hearing and vision loss, stating she was still "debilitated from this," i.e., lacking strength.[1]

**Consulting Physician - Linda Jensen M.D.**

In November 2004, Dr. Jensen reviewed plaintiff's medical records on behalf of the Commissioner and concluded plaintiff has the residual functional capacity to perform light work.  She opined that plaintiff's hearing, vision, and balance problems arising from her brain tumors had stabilized and that plaintiff's contention that her impairments had worsened was not supported by the medical records.

## DISCUSSION

1. **Rejection of Plaintiff's Testimony.**

   Standards.

   A claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'"  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A) (1988)).  See also Cotton v. Bowen, 799 F.2d 1403, 1407-08 (9th Cir. 1986).  A claimant need not produce objective medical evidence of the symptoms or their severity.  Smolen v. Chater, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

---

[1] Dorland's *Illustrated* Medical Dictionary, 28th Ed. (1994).

12 - OPINION AND ORDER

If a claimant produces objective evidence that underlying impairments could cause the pain she complains of and there is no affirmative evidence to suggest the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of her symptoms. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). See also Smolen, 80 F.3d at 1283. To determine whether plaintiff's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Id. at 1284 (citations omitted).

Discussion.

Plaintiff's disability claim rests on her testimony she needed to elevate her legs frequently during the day, that she had right eye strain and left eye blindness that is relieved only when she closes her eyes, that she is able to use her computer only for 10-15 minutes at a time, and after that, she needs to sit down, put her feet up, and close her eyes. She argues that the ALJ improperly rejected that testimony and as a result, found her not to be disabled.

13- OPINION AND ORDER

The court disagrees. The ALJ did not challenge the existence of plaintiff's physical difficulties regarding her eye sight, hearing, balance, or leg swelling. Rather, the ALJ rejected plaintiff's assertion that she was unable to work because of those difficulties. Indeed, the primary reason the ALJ gave for finding plaintiff could work notwithstanding her physical impairments was that, previously, she had been able to work with them. The ALJ pointed out that (1) plaintiff did not leave her job because she was unable to work, but because a reorganization eliminated her job, (2) Dr. Bader reported plaintiff's vision and hearing impairments were stable and her gait was normal both before and after the onset date of her alleged disability, and (3) plaintiff had been able to work in spite of her swollen legs as long as she wore compression stockings, which were recommended by her doctor while she was working. There is also substantial evidence in the record to support the ALJ's finding that Dr. Laurie made a specific recommendation as to the need for plaintiff to elevate her legs at work only because it was plaintiff's preferred method of alleviating leg swelling, not because it was the only reasonable method of doing so.

On this record, I found the ALJ gave clear and convincing reasons for rejecting plaintiff's claim that she could not return to her past relevant work.

14- OPINION AND ORDER

**2.   Rejection of Dr. Laurie's Medical Opinions.**

<u>Standards</u>.

The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant:

> Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons supported by substantial evidence in the record.  Even if the treating doctor's opinion is contradicted by another doctor, the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record.  This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.  The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

<u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir. 1998)(internal citations omitted).  In turn, "the opinions of examining physicians are afforded more weight than those of non-examining physicians."  <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007).  The opinions of treating physicians should be credited as true if the ALJ fails to provide clear and convincing reasons for rejecting them.  <u>See</u> <u>Smolen v. Chater</u>, 80 F.3d 1273, 1992 (9th Cir. 1996).

<u>Discussion</u>.

Plaintiff asserts the ALJ improperly failed to credit Dr. Laurie's opinion that plaintiff has a "significant disability"

15- OPINION AND ORDER

and that her tumors are "debilitating."  Plaintiff also states, and Dr. Laurie's chart notes reflect, that Dr. Laurie completed disability paperwork on plaintiff's behalf in September 2005 that "she does not have good vision in the left eye and cannot work" and again in March 2006 that she has a "history of acoustic neuroma" as to which he had "filled out [disability paperwork]." The disability paperwork, however, does not appear to be included in the record separate from the references to it in Dr. Laurie's chart notes.

In any event, the court concludes the ALJ gave clear and convincing reasons for finding plaintiff was not disabled based on her neuromas and the vision and hearing deficits that resulted from them.  The ALJ, for instance, specifically noted Dr. Bader's reports both before and after plaintiff's job ended that those impairments were stable and had not worsened.  After reviewing the record as a whole, the ALJ stated:

> Between the claimant's ability to work [from March 2001 until June 2004], and the positive medical record reported by Dr. Bader, there is little reason to find that she was significantly limited due to the tumor.  In particular, there is virtually nothing to explain Dr. Laurie's opinion in July 2006 that he suspected that she was debilitated by her neuroma.  Such a suspicion is at most based on her subjective allegations, which in turn are made in the face of the record of her treating specialist, Dr. Bader.

Administrative Record at 19.

16 - OPINION AND ORDER

On this record, I conclude the ALJ gave clear and convincing reasons for not accepting Dr. Laurie's opinion that plaintiff was unable to work because of her neuromas. In particular, there is substantial evidence in the record to support the ALJ's opinion that plaintiff's impairments did not keep her from working for at least three years before her job was eliminated and that there was not a significant deterioration in her impairments after her job was eliminated to preclude her from returning to her past relevant work.

## CONCLUSION

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is **AFFIRMED**.

IT IS SO ORDERED.

DATED this 31 day of July, 2008.

   /s/   Malcolm F. Marsh
MALCOLM F. MARSH
United States District Judge

17- OPINION AND ORDER

18 - OPINION AND ORDER